

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-16-00157-CV

_____

JEFFREY A. SEVERS AND LILA SEVERS, Appellants

V.

MIRA VISTA HOMEOWNERS ASSOCIATION, INC., Appellee

MIRA VISTA HOMEOWNERS ASSOCIATION, INC.; ROBERT GAUDIN AND LINDA GAUDIN, Cross-Appellants

V.

JEFFREY A. SEVERS AND LILA SEVERS, Cross-Appellees

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-271718-14

---

Before Meier, Gabriel, and Pittman, JJ.
Opinion by Justice Pittman

## INTRODUCTION

Appellants/Cross-Appellees Jeffrey A. Severs and Lila Severs filed a lawsuit against their neighbors, Cross-Appellants Robert and Linda Gaudin, and their homeowners association, Appellee/Cross-Appellant Mira Vista Homeowners Association (Mira Vista) to prevent the Gaudins from constructing a second-story addition over their pool cabana. The Severses claimed that the Gaudins' second-story addition both substantively and procedurally violated the neighborhood's "Declaration of Covenants, Conditions and Restrictions for Mira Vista" (CCRs)—substantively because the construction was within a fifteen-foot side setback restriction in the CCRs and procedurally because it deviated from the design-and-construction approval process provided for in the CCRs. However, because Mira Vista's Architectural Control Committee had already approved of the Gaudins' second-story addition, the strategy of the Severses' lawsuit was to enforce the CCRs against the Gaudins vis-à-vis Mira Vista.[1]

The Gaudins and Mira Vista asserted counterclaims to recover their reasonable attorney's fees under the prevailing-party provision of article 12.05 of the CCRs and the Uniform Declaratory Judgments Act, located in chapter 37 of the civil practice

---

[1]Although the Severses' only claims concerning the Gaudins arose out of the CCRs and were for declaratory and injunctive relief, their lawsuit against Mira Vista eventually metastasized to include a host of tort claims.

and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002, .009 (West 2015). After the parties engaged in some discovery, the Severses nonsuited their claims against the Gaudins without prejudice, and the trial court signed an order dismissing the Severses' suit against the Gaudins. The order also stated that the parties bear their own attorney's fees, which seemingly dismissed the Gaudins' counterclaim for attorney's fees.

The trial court disposed of the Severses' claims against Mira Vista when it granted Mira Vista's motion for summary judgment, but in doing so the trial court expressly did not rule on Mira Vista's counterclaim for attorney's fees. There remained confusion regarding the Gaudins' and Mira Vista's counterclaims for attorney's fees, which led to additional motions, hearings, and a three-page letter from the trial court explaining that it was denying the Gaudins' and Mira Vista's requests for attorney's fees because the court did not believe that any party had prevailed and that the equities of the case did not warrant an award of attorney's fees. Subsequently, the court signed an interlineated final order denying all of the parties' requests for attorney's fees.

On appeal, the Severses raise ten issues challenging summary judgment on each of their claims, but the Severses' primary challenge concerns their breach-of-contract claim under the CCRs. On cross-appeal, the Gaudins raise two issues and Mira Vista raises one issue with both seeking to recover their reasonable attorney's fees, which they believe were wrongly denied. For the reasons set forth below, we overrule the

4

Severses' issues and affirm summary judgment on all of their claims, we reverse the trial court's denial of Mira Vista's request for attorney's fees, and we affirm the trial court's denial of the Gaudins' request for attorney's fees. Accordingly, we remand for further proceedings necessary to determine a reasonable amount of attorney's fees to be awarded to Mira Vista.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Mira Vista is Created and Governed by the CCRs

Mira Vista is an upscale, multi-phase subdivision of single-family residences located in Fort Worth, Texas. Like many upscale communities, Mira Vista has CCRs that created the homeowners' association (HOA), that contain certain restrictive covenants, and that set forth the rights and duties of its homeowners and the HOA. Article 12.05 of the CCRs provides that any owner may initiate a legal action to enforce the CCRs and that "[w]ith respect to any litigation hereunder, the prevailing party shall be entitled to recover reasonable attorney's fees from the nonprevailing party." The CCRs do not, however, define "prevailing party."

Article 10 of the CCRs established an Architectural Control Committee (ACC)—a body with authority to review and approve or deny proposed buildings, structures, and other improvements. Article 10 provides that when making its determinations, the ACC will consider such factors as the quality of the improvement's materials and workmanship, its aesthetic conformance with the rest of the development, and its location on the plot and possible effects on neighbors.

5

Despite this authority, the CCRs explain that the ACC "shall not have unbridled discretion with respect to taste, design and any absolute standards specified [in the CCRs]," but it "shall . . . use its best efforts to balance the equities between matters of taste and design (on the one hand) and use of private property (on the other hand)."

Article 10(e) also permits the ACC to publish and promulgate architectural standards for guidance to homeowners for improving their property and states that such standards "shall supplement these Covenants and Restrictions and are incorporated herein by reference." Accordingly, the ACC published a set of Design Guidelines (Guidelines) in January 2007. Relevant here is section 2.1, which requires a minimum fifteen-foot side setback for each home, and section 5, which requires a design-and-construction approval process that includes, in part, the submission of building plans to the ACC prior to the commencement of construction. However, section 5.15 also gives the ACC the right to "*waive or vary any of the procedures or standards set forth herein at its discretion*, for good cause shown." [Emphasis added].

## II.    The Gaudins and Severses Move Into Mira Vista

On December 7, 2006, Robert and Linda Gaudin bought a home in Mira Vista that had been built in 2000 with an eight-foot side setback. This eight-foot setback apparently complied with the minimum side setback requirements at the time and was grandfathered in when the Guidelines were subsequently passed. Six months after moving in, the Gaudins submitted plans to the ACC to build a pool and one-story cabana—an entirely new structure that would be placed at the same eight-foot side

setback—no closer to the property line than their existing home and conforming with all other guidelines and zoning requirements. Thus, the ACC approved the plan because the cabana and would simply extend straight back from the rear of the Gaudins' home.[2]

Six years later, Jeffrey and Lila Severs became interested in purchasing the lot directly south of the Gaudins' residence. The Severses obtained copies of the CCRs and Guidelines, and influenced by the Guidelines' fifteen-foot side setback provision, the Severses purchased the lot on July 31, 2013, despite the facts that (1) both the Gaudins' home and cabana were openly and obviously only eight feet away from the property line, and (2) the Severses' own home was openly and obviously only eight feet away from the property line.

## III.    The Dispute

The instant dispute began on March 4, 2014, when the Severses noticed a construction dumpster in front of the Gaudins' house. After being notified of the construction without having approved any building plans, the ACC immediately halted construction, requested a building plan, and fined the builder $250. Three days later, on March 7, 2014, after receiving payment for the fine and a copy of the

---

[2]Mira Vista did not grant a written variance for the construction because it contends that section 2.1 only applies to "new" home construction and does not apply to phase 1 homes (such as the Gaudins' home) already built prior to the Guidelines being published. The Severses disagree, claiming Mira Vista has no authority to support its position.

building plan, the ACC began evaluating the Gaudins' proposed improvement—a second-story addition above the existing and now almost seven-year old cabana. Because the renovation would not alter home's existing footprint—that is, the renovation was vertical and the structure would remain setback eight feet from the Severses' property line—and because the second-story addition complied with all of the CCRs and Guidelines' other height, material, and color guidelines, the ACC sent the Severses a letter dated March 11, 2014, informing them that the ACC was permitting construction to continue during its evaluation process and that there would be a March 21, 2014 meeting to take place at the Gaudins' home at 10:00 a.m. to discuss issues related to the construction.

The Severses attended the construction meeting where they learned that the Gaudins had not obtained a variance to complete the second-story addition within the fifteen-foot side setback. The Severses began contacting members of the HOA and ACC to voice their objections to the second-story addition. The Severses attended the April 1, 2014 HOA meeting where they asserted their objections that the Gaudins' second-story addition was built in violation of section 2.1's fifteen-foot side setback and that it would alter their view from, and impact the aesthetic value of, their backyard and pool. In response, the ACC held an emergency meeting on April 3, 2014, which was attended by Mrs. Gaudin and the Severses and their respective counsel.

8

The ACC then held another meeting on April 16, 2014 to resolve the issue. In an April 17, 2014 letter, the ACC explained that it had considered the Severses' objections in their decision-making process but was nonetheless approving the Gaudins' second-story addition because it complied with the height, material, and color requirements outlined in the Guidelines and because neither the CCRs nor the Guidelines contain any provision related to view. The letter informed the Severses that in reaching this decision, all of the ACC's members had reviewed the Gaudins' building plans and personally visited the building site.

Although not included in the April 17, 2014 letter, the ACC later justified its approval because the second-story addition would not alter the Gaudins' home's ground footprint, which had been completed before the Guidelines' fifteen-foot side setback requirement. The ACC justified its streamlined approval process under section 5.15 of the Guidelines and explained that it frequently omits many of the cumbersome procedural steps when proposed projects do not include original construction. The ACC explained that

> [a] preliminary design submittal was not necessary to an addition for an existing house because no driveway, landscaping or additional foundation was installed. To do so would require the Gaudins to have incurred an unnecessary expense and unnecessarily delayed the project. The ACC does not require residents incur expenses in a remodel project simply to comply with steps intended for original construction.

**IV.    The Severses File Suit Against the Gaudins and Mira Vista**

Having failed to halt the Gaudins' second-story addition through the ACC and HOA processes, on April 22, 2014, the Severses filed the underlying lawsuit and requested a temporary restraining order (TRO) against both the Gaudins and Mira Vista. In their application for a TRO, the Severses sought injunctive relief, requiring, inter alia, that the Gaudins' house "must be returned to its previous condition and that no remodel construction can take place in violation of the 15 foot side setback restriction." On the same day, the Gaudins filed their original answer and counterclaims in which they sought recovery of their attorney's fees under article 12.05 of the CCRs, and alternatively, under section 37.009 of the civil practice and remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 37.009.[3]

The trial court denied the request for a TRO, and on June 11, 2014, the Severses amended their petition. Although the Severses expanded their argument by claiming that the subsequent fifteen-foot setback in the Guidelines controls over the previously ACC-approved eight-foot side setback, they asserted no new causes of action and requested the same injunctive relief.

The trial court conducted a hearing on the Severses' second application for a TRO during which the following exchange occurred between the Severses' counsel and the trial court:

---

[3]Eventually, Mira Vista asserted its own counterclaim for attorney's fees under the same contractual and statutory provisions.

[SEVERSES' COUNSEL]: Now, yes, *do my clients want -- in the ultimate world, I would like it to never have started. But we are where we are. So there's two things: Tear it all down, start back from the very beginning,* have a trial on the merits until you get to do it.

THE COURT: Who pays for that?

[SEVERSES' COUNSEL]: I think the HOA does.

I agree with [the Gaudins' counsel], the Gaudins, through their builder, submitted what the HOA told them to submit and the HOA said go forward.

THE COURT: So you agree, then, that the Gaudins did not do anything wrong. They went through the process, they got their approval and they didn't do anything wrong?

[SEVERSES' COUNSEL]: Well, from my understanding of building houses, the builder is the one who does all that. *So do I think that Mr. and Mrs. Gaudin actually did anything wrong? No, I don't think they did.*

[Emphasis added].

The trial court denied the Severses' second request for a TRO. The Severses responded by filing a second amended petition, adding a litany of tort claims against Mira Vista—including claims for breach of fiduciary duties, promissory estoppel, negligent misrepresentation, and private nuisance—in addition to their requests for declaratory and injunctive relief concerning the Gaudins.

The lawsuit proceeded to the discovery stage and in his deposition testimony, Mr. Severs acknowledged that because the Gaudins had indeed obtained approval from the ACC, the Severses primarily blamed Mira Vista and not the Gaudins for the alleged violations of the CCRs and Guidelines:

11

[GAUDINS' COUNSEL]: What is it specifically that you think the Gaudins did wrong?

MR. SEVERS: Specifically what the Gaudins did wrong other than -- other than the placement of their pool pumps and air-conditioning equipment, I'm not aware of anything else that they have done wrong relative to this construction. Okay? Now, there may be but I'm not aware of anything.

[GAUDINS' COUNSEL]: And is that based on the fact that you don't disagree with the notion that they did get ACC approval for the remodeling projects on their home?

MR. SEVERS: They did get ACC approval from what I understand, yes, but we -- we question if the guidelines were applied.

[GAUDINS' COUNSEL]: And if there was deviation from the guidelines, it's not your contention that's the Gaudins' doing, is it?

MR. SEVERS: Well, if the ACC approved the plans, then, you know, I would see that as being the -- the ACC's and the HOA's issue, not the Gaudins['].

Shortly thereafter the Severses filed a nonsuit without prejudice dismissing their claims against the Gaudins. Notably, the Severses' proposed order granting nonsuit included an order that the Gaudins should bear their own legal fees, to which the Gaudins filed an objection. The Severses then filed a third amended petition and application for temporary restraining order, which no longer named the Gaudins as a party, but still included their requests for declaratory and injunctive relief that the second-story addition be taken down—relief that directly implicated the Gaudins.[4]

---

[4]A comparison of the Severses' second amended petition, which included the Gaudins as parties, and the Severses' third amended petition, which removed the Gaudins as parties, reveals that the factual allegations are nearly identical, and with the exception of one new request for declaratory judgment, all of the relief requested is

Mira Vista filed a motion for partial summary judgment on all of the Severses' claims, and the Gaudins filed a motion for partial summary judgment on their counterclaim for attorney's fees.

## V.     Attorney's Fees

The trial court signed an order granting the Severses' nonsuit, dismissed all of the Severses' claims against the Gaudins without prejudice, and ordered the Gaudins to pay their own attorney's fees. On the same day, the trial court granted Mira Vista's motion for summary judgment and dismissed all of the Severses' claims against it but expressly did not rule on Mira Vista's counterclaim for attorney's fees. The Gaudins filed a motion to vacate the court's order on the Severses' nonsuit, and Mira Vista filed a motion for summary judgment and amended motion for summary judgment on its counterclaim for attorney's fees. After conducting several hearings, the trial court sent the parties a letter dated December 21, 2015, stating that it was denying both the Gaudins' motion to vacate and Mira Vista's motion for summary judgment on attorney's fees. The trial court explained that because "no party prevailed in this matter" under article 12.05 of the CCRs and because awarding attorney's fees is discretionary under section 37.009 of the civil practice and remedies code and the

---

identical. Indeed, requests for declaratory judgment numbers two, three, five, and six in the third amended petition expressly sought relief that would directly and materially affect the Gaudins.

13

court did not believe the equities in the case warranted such, it was not awarding any party attorney's fees.

The parties apparently remained confused, so Mira Vista filed a motion to reconsider and the Severses filed a motion for summary judgment on attorney's fees. The trial court held a status conference to clarify its position and then on April 19, 2016, signed an interlineated final order denying all parties' requests for attorney's fees. Each party timely appealed. The Severses challenge the trial court's summary judgment as to all of their claims against Mira Vista and the Gaudins and Mira Vista challenge the trial court's order denying their request for attorney's fees.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

A party moving for summary judgment on its own claim must prove entitlement to summary judgment on each element of the party's cause of action. *Martin v. Palmer*, 1 S.W.3d 875, 876–77 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant. *Peterson v. Continental Cas. Co.*, 997 S.W.2d 893, 895 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The nonmovant must then respond and present any issues that would preclude summary judgment for the movant. *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). A defendant relying upon an affirmative defense must then come forward with evidence raising a fact issue on each element of its affirmative defense to avoid the summary judgment on that basis. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Bauer v. Jasso*, 946 S.W.2d 552, 555 (Tex. App.—Corpus Christi 1997, no pet.).

## THE SEVERSES' CLAIMS AGAINST MIRA VISTA

The Severses set forth ten issues in this appeal. Because the first six issues concern their claim for breach of contract, we will address those issues together. We will address the remaining issues concerning the Severses' remaining causes of action individually.

## I. Breach of Contract

The Severses believe that the trial court erred in granting summary judgment on their breach-of-contract claim because it misconstrued the language contained in the CCRs and Guidelines. The Severses claim Mira Vista's actions were arbitrary and

15

capricious in reasoning that the two-story addition to the Gaudins' home would not change the already-existing footprint with an eight-foot side setback, even though the Guidelines restrict construction within a fifteen-foot setback. The Severses' contention appears to be that because the Gaudins' home, as already constructed fourteen years earlier, was already in violation of the fifteen-foot setback requirements, any additional construction within the setback—even if only building vertically and thus not altering the "footprint"—would still need to go through the requisite application-and-approval-of-a-variance process or simply be denied.

In response, Mira Vista contends that the Guidelines do not apply to the Gaudins' home as a "phase 1 home" and that in any event, Mira Vista can waive any such requirements. Further, Mira Vista asserts that a statutory presumption of reasonableness applies to their decision pursuant to section 202.004 of the property code and that the Severses failed to overcome the presumption to establish that Mira Vista acted in an arbitrary, capricious, or discriminatory manner. Tex. Prop. Code Ann. § 202.004(a) (West 2014).

## A.    Applicable Law Concerning Restrictive Covenants

We review the trial court's construction of restrictive covenants de novo. *See Garrett v. Sympson*, 523 S.W.3d 862, 866 (Tex. App.—Fort Worth 2017, pet. denied). When interpreting restrictive covenants, we apply the general rules of contract construction. *Id.* (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Our primary task is to determine the drafter's intent from the instrument's language. *Id.*

16

(citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987)). In ascertaining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *See id.* (citing *Pilarcik*, 966 S.W.2d at 478). Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction; words and phrases used in the covenant must be given their commonly accepted meaning. *Id.* (citing *Wilmoth*, 734 S.W.2d at 657–58; *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308 (Tex. App.—Fort Worth 2001, no pet.)).

If a restrictive covenant can be given a definite legal meaning, it is unambiguous and should be construed liberally to effectuate its intent. *See id.* (citing Tex. Prop. Code Ann. § 202.003(a) (West 2014)); *Jennings v. Bindseil*, 258 S.W.3d 190, 195 (Tex. App.—Austin 2008, no pet.); *Vill. of Pheasant Run Homeowners Ass'n, Inc. v. Kastor*, 47 S.W.3d 747, 751 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (explaining a liberal construction of restrictive covenants pursuant to section 202.003(a) is a statutory exception to the common-law rule of strict construction). Only when a restrictive covenant may reasonably be interpreted in more than one way is it ambiguous, and in that case we will resolve all doubts in favor of the free and unrestricted use of the property, strictly construing any ambiguity against the party seeking to enforce the restriction. *Garrett*, 523 S.W.3d at 866 (citing *Wilmoth*, 734 S.W.2d at 657; *Dyegard Land P'ship*, 39 S.W.3d at 308–09).

The party seeking to enforce a restrictive covenant has the burden of showing that the restriction is valid and enforceable. *Gillebaard v. Bayview Acres Ass'n*, 263 S.W.3d 342, 347 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). If the dispute centers on "[a]n exercise of discretionary authority by a property owner's association . . . concerning a restrictive covenant," the association's action is statutorily presumed reasonable unless it is shown that its action was arbitrary, capricious, or discriminatory. Tex. Prop. Code Ann. § 202.004(a); s*ee also Gettysburg Homeowners Ass'n v. Pulte Corp. of Tex.*, No. B14-89-00596-CV, 1990 WL 38271, at *3 (Tex. App—Houston [14th Dist.] Mar. 29, 1990, no writ) (reversing summary judgment on builder's claim that association wrongfully rejected builder's plans on statutory ground).

## B. The ACC's Decisions Were Within Its Contractual Authority

Although the parties advance several arguments, in our view, the Severses' breach-of-contract claim ultimately turns on the scope of the ACC's authority to vary or waive its standards and procedures for approving the Gaudins' second-story addition and whether Mira Vista thus violated the CCRs and Guidelines. That is, whether the fifteen-foot side setback requirement of section 2.1 of the Guidelines applies to the Gaudins' phase-1 home and second-story addition—an issue on which the parties vehemently disagree—may not be dispositive if the Guidelines grant the ACC discretion to waive any such requirements contained therein. Thus, we begin by examining the plain language of section 5.15.

Section 5.15 of the Guidelines states, in part, "The Architectural Control Committee reserves the right *to waive* or vary *any of the procedures or standards set forth herein* at its discretion for good cause shown." [Emphasis added]. We make several observations about this language. First, section 5.15 of the Guidelines distinguishes between the ACC's right to waive or vary. This matters because the remainder of section 5.15 concerns the requirements for granting variances, which, inter alia, must be requested in writing. So, although it is undisputed that no written variance was requested or issued for the second-story addition, the ACC would still have discretion under the Guidelines to waive—i.e., intentionally relinquish its right to enforce[5]—any procedure or standard should it apply. Second, the ACC may waive "*any* of the procedures *or* standards." [Emphasis added]. This is a categorical statement that expressly applies to both procedures and standards. We read the fifteen-foot side setback of section 2.1 to be a standard, so the ACC could waive it. Similarly, any procedure for the approval of construction—i.e., presubmission and approval of building plans—could also be waived. Finally, the fifteen-foot side setback requirement that the Severses seek to enforce is located "herein" in section 2.1 of the Guidelines. Thus, the ACC could waive the side setback requirement in approving any construction.

---

[5] *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 584 (Tex. App.—San Antonio 2017, pet. filed) (explaining that in the context of restrictive covenants, "[w]aiver is the intentional relinquishment of a known right or intentional conduct that is inconsistent with asserting that right").

We conclude that this plain language expressly grants the ACC discretion to waive any procedures and standards necessary to approve the Gaudins' second-story addition. Thus, we hold that the ACC was within its contractual authority to alter its approval process or any applicable side-setback standards via waiver—even if the second-story addition conflicted with section 2.1 of the Guidelines. *See Pilarcik*, 966 S.W.2d at 480 (concluding that "[b]ecause the Architectural Control Committee had the authority to waive" certain roof requirements under the restrictive covenants, "the waiver provided by the ACC was effective").

We overrule the Severses' first and second issues.

## C.    No Showing Mira Vista Breached

The Severses also challenge what they characterize as the trial court's implied finding that Mira Vista did not breach the Guidelines. The Severses assert ten examples of Mira Vista's purported breaches of the Guidelines that would challenge an implied finding that Mira Vista did not breach the Guidelines. However, all ten examples concern various approval procedures under sections four and five of the Guidelines, and as shown above, Mira Vista did not breach the CCRs or Guidelines as any breach-of-contract claims related to the approval process and fifteen-foot side setback requirements are subject to the ACC's contractual right of waiver.[6] Therefore, we overrule the Severses' third issue.

---

[6]Moreover, the first purported breach concerns the Gaudins and not Mira Vista. Not only did the Severses nonsuit all claims against the Gaudins, but in that

## D. Neither Decision Was Arbitrary, Capricious, or Discriminatory

The Severses have an additional burden to rebut the statutory presumption that the ACC acted reasonably in altering its approval procedures and approving the Gaudins' second-story addition. In issues four, five, and six, the Severses challenge the trial court's implied findings that the ACC acted reasonably.

The property code provides that "[a]n exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." *See* Tex. Prop. Code Ann. § 202.004(a). This statutory presumption of reasonableness applies to actions of the ACC. *See Hardee v. Westminster Glen Phase I Homeowner's Ass'n., Inc.*, No. 03-00-00445-CV, 2001 WL 223383, at *3 (Tex. App.—Austin Mar. 8, 2001, no pet.) (not designated for publication) (discussing section 202.004(a)'s presumption of reasonableness in light of actions taken by the HOA's architectural committee).

Applying section 202.004(a)'s presumption of reasonableness to the ACC's approval of the Gaudins' second-story addition, the Severses failed to produce sufficient evidence to controvert that the ACC acted reasonably. Indeed, a review of

---

instance, it is undisputed that Mira Vista responded to the Gaudins' failure to obtain building approval from the ACC prior to the City of Fort Worth by fining the builder and halting construction.

the record reveals that the first action taken by the ACC was to halt construction and fine the Gaudins' builder upon learning that the Gaudins had begun the second-story addition without approval from the ACC. This demonstrated a willingness of the ACC to enforce the CCRs and Guidelines against the Gaudins. Further, the Severses were provided opportunities to voice their objections at the on-site March 21, 2014 meeting, the April 1, 2014 HOA meeting, and the April 3, 2014 emergency ACC meeting. The ACC then met once more, and only after expressly considering the Severses' objections, reviewing the Gaudins' building plans, and visiting the building site, the ACC notified the Severses in writing that it had decided to approve the second-story addition because it complied with all applicable height, materials, and color requirements, and neither the Guidelines nor CCRs contain anything related to view. The ACC also reasoned that the renovation did not alter the home's footprint, which was (1) approved of before the Guidelines were adopted, and (2) accepted by the Severses when they purchased the adjacent home in 2013.

We hold that the ACC's decision to approve the Gaudins' addition was not arbitrary, capricious, or discriminatory and that the Severses failed to produce sufficient evidence to rebut the presumption that the ACC's decision was reasonable. *See Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 935 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding record demonstrated ACC had not shown favoritism to ACC member whose fence was in violation of setback restriction because his original

22

plans were initially rejected by the ACC before being amended and approved, and the ACC had thus acted reasonably in denying homeowner's request for variance).

Applying this analysis to the ACC's decision to alter the approval process yields the same result. As held above, the ACC was acting within its contractual authority to waive its approval procedures, and the reasons it cited—namely, no new foundation work and compliance with all height, color, and materials requirements—reasonably support such actions. *See id.* We also note that even with an altered approval process, the record supports that each member of the ACC still reviewed the Gaudins' building plans and personally visited the building site. Further, the record supports that the ACC frequently streamlines its approval process for construction that is not "new" construction. Therefore, we hold that nothing concerning the ACC's decision to waive certain approval procedures was arbitrary, capricious, or discriminatory, and the Severses fail to produce evidence to sufficiently rebut the presumption of reasonableness. *See id.*

We overrule the Severses' fourth, fifth, and sixth issues.

## II. Declaratory Relief

In issue seven, the Severses claim the trial court improperly granted summary judgment on its seven requests for declaratory relief. The Severses presented the trial court with the following requests for declaratory judgment:

(1) A declaration that the CCRs and Guidelines impose a general scheme of development, particularly as related to side setbacks;

(2)    A declaration that the fifteen-foot side setback applies to the Gaudin residence;

(3)    A declaration that the Gaudin's remodeling project violates the Guidelines;

(4)    A declaration that the ACC violated the Guidelines by approving the Gaudins' addition;

(5)    A declaration that the Gaudins' home be returned to its previous condition and that no remodel construction can occur within the fifteen-foot side setback;

(6)    A declaration that the air conditioning units and pool pumps located next to the property line violate the Guidelines; and

(7)    A declaration that the HOA violated the CCRs and Guidelines when it approved the Gaudins' addition.

**A.    Declaratory Relief is Unavailable if Granting Such Would Constitute an Advisory Opinion or if the Issue Is Whether a Contract Was Breached**

The Uniform Declaratory Judgements Act's (UDJA) purpose is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2015).  "A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."  *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).  The UDJA, however, does not grant courts the authority to render advisory opinions.  *See Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998); *Schecter v. Wildwood Developers, L.L.C.*, 214 S.W.3d 117, 121 (Tex. App.—El Paso 2006, no pet.) ("An opinion is advisory when the judgment sought would not constitute

24

specific relief to a litigant or affect legal relations."). Nor does the UDJA permit courts to grant declaratory relief when the real issue is determining whether a party breached an agreement. *See Bonham State Bank*, 907 S.W.2d at 467; *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 140 (Tex. App—El Paso 1997, pet. denied).

**B. Each of the Severses' Seven Claims Either Seeks an Advisory Opinion or Concerns a Contractual Dispute**

None of the Severses' seven requests are appropriate candidates for declaratory relief. Rather, requests three through seven duplicate the relief sought under the Severses' breach-of-contract claims. The Severses do not request that we determine the parties' rights under the CCRs or Guidelines but instead ask for us to declare that that Mira Vista and the ACC breached when they approved the Gaudins' addition. Such a declaration is both duplicative, considering the Severses' breach-of-contract claim, and inappropriate under section 37.002 of the UDJA. Moreover, considering that the Severses nonsuited the Gaudins, there is no basis for this Court to grant declaratory relief on the Severses' third, fifth, and sixth requests.

Further, requests one through three effectively request advisory opinions because the evidence proffered by Mira Vista and discussed at length above demonstrates that the Gaudins' addition does not violate the side setback provision because the ACC had authority under the Guidelines to waive any such requirement. Thus, rendering a declaratory judgment on requests one through three would be

25

advisory because the side-setback guidelines were not implicated in the ACC's approval of the renovation.

Therefore, because each of the seven claims for declaratory relief either concerns a contractual dispute or would constitute an advisory opinion, we overrule the Severses' seventh issue.

## III. Issue Eight: the Severses' Promissory Estoppel, Negligent Misrepresentation, Breach of Fiduciary Duty, and Private Nuisance Claims

In their eighth issue, the Severses challenge summary judgment on their claims of promissory estoppel, negligent misrepresentation, breach of fiduciary duty, and private nuisance.[7]

### A. Promissory Estoppel

The Severses asserted that, in the alternative to their breach-of-contract claim, they should recover under a theory of promissory estoppel. The Severses claim that

---

[7]The Severses' briefing regarding their promissory estoppel and negligent misrepresentation claims appears not to challenge the merits of the claims, but that the trial court improperly dismissed them via summary judgment because the Severses pleaded these claims in the alternative to their breach-of-contract claim. If we follow the Severses' argument correctly, in the event their breach-of-contract claim failed, their promissory estoppel and negligent misrepresentation claims would step in and fill the shoes of the dismissed breach-of-contract claim. However, this argument ignores the fact that their breach-of-contract claim could fail—not for lack of an enforceable contract—but because there simply was no breach. In that case, as in this case, the enforceable contract covering the same subject matter as the alleged misrepresentation and providing for the same measure of damages generally renders promissory estoppel and negligent misrepresentation claims unavailable. In the interest of thoroughness, however, we briefly address the merits of these claims.

26

they suffered by detrimentally relying on section 2.1 of the Guidelines and article 10(b) of the CCRs when they decided to purchase their home in Mira Vista.

### 1. Promissory estoppel is inapplicable when the disputed promises are contained within a written contract.

Although primarily a defensive matter, promissory estoppel is also a cause of action available to a promisee who has determinately relied on an otherwise unenforceable promise. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133–34 (Tex. 2005); *Burkett v. Lake Country Prop. Owners Ass'n*, No. 02-13-00090-CV, 2014 WL 1510137, at *2 (Tex. App.—Fort Worth Apr. 17, 2014, no pet.) (mem. op.). "If, however, a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied) (citing *Guaranty Bank v. Lone Star Life Ins. Co.*, 568 S.W.2d 431, 434 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.)); *see also Lake v. Cravens*, 488 S.W.3d 867, 907 (Tex. App.—Fort Worth 2016, no pet.); *Burkett*, 2014 WL 1510137, at *2 ("[T]he promisee cannot [choose to] disregard the contract and sue for reliance damages under the doctrine of promissory estoppel.").

### 2. The alleged promise was within the scope of the contract.

Here, the CCRs and Guidelines are contracts that govern the instant dispute. Indeed, the primary focus of this lawsuit concerned disputes about the interpretation

and application of these contracts. However, the Severses fail to allege, let alone establish, that they detrimentally relied on a promise made by Mira Vista separate or apart from these documents. Rather, the Severses readily acknowledge that their decision to move into Mira Vista was motivated by the *words contained in these contracts*— not oral promises outside of these contracts—which they received before purchasing the home. Therefore, promissory estoppel is inapplicable to the instant dispute. *See Burkett*, 2014 WL 1510137, at *3 (holding promissory estoppel is "not a viable claim" for homeowner to recover due to an HOA's allegedly erroneous interpretation of an enforceable restrictive covenant).

The Severses argue that section 2.1 of the Guidelines is a proper basis for promissory estoppel because if its fifteen-foot side-setback restriction does not apply to the Gaudins' lot, it must be considered a representation outside of the contractual agreement. This argument is incorrect. As explained above, the requirements of section 2.1 must be read in light of and harmonized with the rest of the Guidelines, which includes the waiver provision of section 5.15. *See Owens v. Ousey*, 241 S.W.3d 124, 130 (Tex. App.—Austin 2007, pet. denied) (explaining courts "must construe restrictive covenants as a whole, give effect to every sentence, clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative"). Thus, we read the ACC's right "to waive . . . any . . . standards set forth herein" in harmony with, and as an exception to, the standards of section 2.1. *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex.

28

App.—Austin 2001, no pet.) (rejecting promissory estoppel because the alleged representation was part of a valid contract and a party to a contract has a duty to be familiar with its terms).

Because the Severses failed to present any evidence that they detrimentally relied on a promise that was outside of the CCRs and Guidelines, admit that the written contracts contain the disputed promise, and base their promissory-estoppel claim on the same provision on which they base their breach-of-contract claim, we overrule this portion of the Severses' eighth issue.

### B.     Negligent Misrepresentation

The Severses also filed a claim for negligent misrepresentation based on the provisions contained in the CCRs and Guidelines.  The Severses argue that the trial court erred in finding that there was a valid contract between Mira Vista and the Severses.  Mira Vista responds that the existence of enforceable contracts—the CCRs and Guidelines—and the economic loss rule bar the Severses' claim for negligent misrepresentation.

####     1.     Negligent misrepresentation is a tort that requires that the claim is separate from a contract claim, and that there be an injury independent of contractual damages.

The existence of a valid contract between the parties is not an absolute bar to a negligent-misrepresentation claim.  *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (holding even where there is a contract

29

between the parties, Texas courts will not apply the economic loss doctrine to bar a tort suit when the defendant is alleged to have breached "an independent legal duty, separate from the existence of the contract itself"); *cf.* Robert K. Wise & Heather E. Poole, *Negligent Misrepresentation in Texas: The Misunderstood Tort*, 40 Tex. Tech L. Rev. 845, 847 (2008) ("Originally, only parties in privity of contract could sue a provider of information for negligent misrepresentation."). However, when a valid contract does exist between the parties, an injury *independent of the contract* must occur to maintain a separate claim for negligent misrepresentation. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (relying on Restatement (Second) of Torts § 552B). That is, Texas law precludes a negligent misrepresentation claim for recovery of economic loss if said loss is recoverable under a breach-of-contract claim. *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 246–47 (Tex. 2014); *see also Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding independent injury rule precluded recovery under negligent misrepresentation because appellant only sought benefit-of-the-bargain damages, which were recoverable under breach-of-contract claim).

2. **There was a contract between the parties, the loss claimed is subject to contract claims, and no independent injury was alleged.**

Here, it is undisputed that there were two valid contracts between the parties. Indeed, the Severses' primary cause of action centers on the interpretation and enforcement of the CCRs and the Guidelines. Moreover, the Severses' claim for a

diminution of their home's value arises solely from claims related to the alleged breach of the CCRs and Guidelines. That is, the economic losses they claim are due to the benefit of their bargain, which sounds in contract. Finally, the Severses fail to allege any misrepresentations outside of the CCRs and Guidelines and fail to point to any injuries independent of the damages they sought to recover under their breach-of-contract claim.

Thus, we hold that the Severses' claim for negligent misrepresentation fails due to the economic loss rule. *See Sterling Chemicals, Inc.*, 259 S.W.3d at 798. We overrule this portion of the Severses' eighth issue.

### C.   Breach of Fiduciary Duty

The Severses also claim that Mira Vista owed them a fiduciary duty as lot owners in Mira Vista.

#### 1.   Whether a fiduciary duty exists is a question of law absent evidence of a confidential relationship.

To succeed on a breach-of-fiduciary-duty claim, a plaintiff must establish, "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.) (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). Certain formal relationships create fiduciary relationships as a matter of law. *See, e.g., Garrison*

31

*Contractors, Inc. v Liberty Mutual Ins. Co.*, 927 S.W.2d 296, 301 (Tex. App.—El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex. 1998). But informal relationships—whether moral, social, domestic, or purely personal—may also give rise to fiduciary duties where one person trusts in and relies on another. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997). But not every relationship involving a high degree of trust and confidence rises to the status of a fiduciary relationship. *Id.* at 176–77. Indeed, to give full force to contracts, Texas courts do not create such a relationship lightly. *Id.* at 177. Accordingly, although a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Id.*; *see also T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 720 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (declining to recognize fiduciary duty between owner of a country club and property owners' association that paid club fees).

Determining whether a fiduciary relationship exists, formal or otherwise, is a question of law. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

### 2. There is no fiduciary relationship between the Severses and Mira Vista.

The cases cited and relied on by the Severses each concerned the relationship between a condominium association and an owner. *Sassen v. Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 492–93 (Tex. App.—Texarkana 1994, writ denied); *Harris By & Through Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 898 (Tex. App.—Houston [1st Dist.] 1998, no pet.). But a condominium association is governed by title 7 of the property code, *see* Tex. Prop. Code Ann. §§ 81.001–82.164 (West 2014 & Supp. 2017), whereas a homeowners' association is governed by title 11. *See* Tex. Prop. Code Ann. §§ 201.001–215.018 (West 2014 & Supp. 2017). Thus, as an initial matter, it is not clear that the Severses' authorities are apposite.

But more than that, the Severses set forth no evidence that a formal or informal fiduciary relationship of trust and confidence exists between the two parties prior to, and apart from, the contractual relationship. Nor do the Severses set forth evidence of a fiduciary duty owed to them by Mira Vista under their status as property owners under the CCRs and Guidelines. Our review of the CCRs and Guidelines likewise does not reveal an agreement to enter into a fiduciary relationship.

Therefore, we hold that the record supports the trial court's conclusion that no fiduciary relationship exists between Mira Vista and the Severses. *See La Ventana Ranch Owners' Ass'n, Inc. v. Davis*, 363 S.W.3d 632, 646 (Tex. App.—Austin 2011, pet. denied) (reversing jury finding of informal fiduciary relationship between two

33

members of the HOA's architectural committee and the HOA's homeowners because evidence was legally insufficient when the only evidence supporting such a relationship was based two homeowners' testimony of subjective beliefs).

Accordingly, we overrule this portion of the Severses' eighth issue.

### D.    Private Nuisance

The Severses' appeal the summary judgment on their claim for private nuisance on the ground that an issue of material fact exists.

A private nuisance is "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 593 (Tex. 2016) (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)).  The Supreme Court of Texas has explained that although questions surrounding a private nuisance "generally present questions of fact for the jury to decide," a court may decide these issues as a matter of law "if the underlying facts are undisputed or, in light of all the evidence, 'reasonable minds cannot differ.'" *Id.* at 609 (quoting *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 261 (Tex. 1999)).

Among others, a key problem for the Severses' private nuisance action against Mira Vista is that the Severses do not allege any action *taken by Mira Vista* that would constitute substantial interference with the Severses' reasonable enjoyment of their home.  And, it must be the defendant who substantially interferes with the plaintiff's use and enjoyment of their property.  *See, e.g., Randall Noe Chrysler Dodge, LLP v. Oakley*

34

*Tire Co.*, 308 S.W.3d 542, 549 (Tex. App.—Dallas 2010, pet. denied) (affirming summary judgment on nuisance claim against business owner who hired painter that purportedly created nuisance because owner did not control painter or participate in painter's actions). Mira Vista permitted but did not participate in the construction of the Gaudins' second-story addition. *See id.* As such, Mira Vista was not the actor who purportedly interfered with the Severses' use and enjoyment of their property and no such private nuisance claim is available to them.[8]

Moreover, Texas courts have consistently denied private nuisance claims for loss of view. *See, e.g.*, *Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 512 (Tex. App.—Eastland 2008, pet. denied) ("Texas caselaw recognizes few restrictions on the lawful use of property. If Plaintiffs have the right to bring a nuisance action because a neighbor's lawful activity substantially interferes with their view, they have, in effect, the right to zone the surrounding property."); *Scharlack v. Gulf Oil Corp.*, 368 S.W.2d 705, 707 (Tex. Civ. App.—San Antonio 1963, no writ) ("[A] building or structure cannot be complained of as a nuisance merely because it obstructs the view of neighboring property."). Based on the undisputed facts of this case, reasonable minds cannot differ that the second-story addition—which complies with the Guidelines, other than the alleged preexisting side-setback violation—does not constitute a private nuisance because it may interfere with the Severses' view.

---

[8]Nor did the Severses plead or prove an agency relationship between Mira Vista and the Gaudins.

35

Because Mira Vista is not an appropriate defendant for this private nuisance action and, even if it were, the alleged loss-of-view harm is routinely rejected by Texas courts when it is used as the basis for a private nuisance claim, we hold that the trial court did not err in granting summary judgment.

We overrule the Severses' eighth issue.

## IV. Issues Nine and Ten

In issue nine, the Severses assert that the trial court erred to the extent that it granted summary judgment pursuant to section 204.011 of the property code. *See* Tex. Prop. Code Ann. § 204.011 (West 2014). In issue ten, the Severses assert that the trial court erred to the extent that it relied upon the doctrine of judicial nonintervention in granting summary judgment.

These issues have minimal briefing with almost no citations to the record or applicable authorities. Issue nine is comprised of three sentences, and issue ten amounts to a repackaging of the Severses' argument that the ACC acted arbitrarily and capriciously in approving the Gaudins' second-story addition. These inadequacies notwithstanding, because we affirm summary judgment on other grounds, we need not address these issues. Tex. R. App. P. 47.4. Accordingly, they are overruled.

## ATTORNEY'S FEES

## I. In General

The United States Supreme Court has recently opined that when reviewing an award of attorney's fees, the "American Rule" is the "bedrock principle" that forms

36

the "basic point of reference." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S. Ct. 2149 (2010)). Texas adheres to the American Rule, which means that litigants may recover attorney's fees only if specifically provided for by statute or contract.[9] *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 & n.7 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees."). "Parties to a contract may also recover attorney's fees, . . . if they arrange for such recovery as a contractual term." *Silver Lion, Inc. v. Dolphin Street, Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *17 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op. on reh'g) (citing *New Amsterdam Cas. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967)). So, although a party suing for breach of contract may seek to recover attorney's fees pursuant to the requirements of section 38.001 of the civil practice and remedies code, parties are free to contract for recovery of attorney's fees without such limitations. *See Intercontinental Grp. P'ship*, 295 S.W.3d at 653; Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015).

---

[9]The American Rule is characterized as such in contrast with the "English Rule." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, (1975) ("At common law, costs were not allowed; but for centuries in England there has been statutory authorization to award costs, including attorneys' fees. Although the matter is in the discretion of the court, counsel fees are regularly allowed to the prevailing party.").

The Gaudins and Mira Vista asserted the same contractual (article 12.05 of the CCRs) and statutory (section 37.009 of the civil practice and remedies code) grounds to support their counterclaims for attorney's fees.[10]

## II. Article 12.05 of the CCRs

### A. Standard of Review

We generally review a trial court's award or denial of attorney's fees for an abuse of discretion. *Polanksy v. Berenji*, 393 S.W.3d 362, 367 (Tex. App.—Austin 2012, no pet.). There is some uncertainty, however, as to the standard of review when, as is the case here, we review a trial court's decision to deny a defendant's counterclaim for attorney's fees under a "prevailing party" clause in a contract when the contract does not define "prevailing party" and the plaintiff has nonsuited its claims without prejudice. *N. Star Water Logic, LLC v. Ecolotron, Inc.*, 486 S.W.3d 102, 105 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In accordance with the First and Fourteenth District Courts of Appeal, we will apply a mixed standard of review as follows: "[W]hether a party nonsuited to avoid an unfavorable ruling is a question of fact, which we review for an abuse of discretion, but we review any legal determinations, such as whether the suit had an arguable basis in law, *de novo*." *Id.*; *Referente v. City View Courtyard, L.P.*, 477 S.W.3d 882, 885–86 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[W]e will review the trial court's determination under *Epps*

---

[10]Mira Vista does not appeal the denial of its request for attorney's fees under the UDJA.

38

for an abuse of discretion, deferring to factual findings that are supported by some evidence, but reviewing legal questions de novo.").

### B.    Attorney's Fees Provision in the CCRs and Applicable Law

We begin our analysis with article 12.05 of the CCRs, which provides, in relevant part, as follows: "With respect to any litigation hereunder, the prevailing party shall be entitled to recover reasonable attorney's fees from the nonprevailing party." The CCRs do not, however, provide a definition of "prevailing party." Thus, to resolve the Gaudins' and Mira Vista's appeal, we must determine what is meant by this term.[11]

The Supreme Court of Texas has instructed that when interpreting a contractual attorney's fee provision in which the "prevailing party" term is left undefined, we are to "presume the parties intended the term's ordinary meaning." *Intercontinental Grp. P'ship*, 295 S.W.3d at 653 (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)); *see also Kingsley Props., LP v. San Jacinto Title Servs. of Corpus Christi, LLC*, 501 S.W.3d 344, 349 (Tex. App.—Corpus Christi 2016, no pet.) ("Contracting parties may determine the standard that will govern the attorney's fee

---

[11] Upon a showing of prevailing-party status, article 12.05's use of the word "shall" clearly indicates that the recovery of reasonable attorney's fees from the nonprevailing party is mandatory. *See World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied) (recognizing that while a trial court has discretion to fix the amount of attorney's fees, it does not have the discretion to completely deny attorney's fees if they are proper); *Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The word 'shall' as used in contracts is generally mandatory, operating to impose a duty.").

award for a 'prevailing party,' rather than relying on the definition of that term in the case law. In such cases, it is the language of the contract, not the statute or case law, which governs.") (internal citations omitted).

Construing an attorney's-fees provision similar to this one, the Fourteenth Court of Appeals noted that the "contractual provision entitling a 'prevailing party' to recover attorneys' fees does not distinguish between successful prosecution and successful defense of a claim." *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, LP*, 346 S.W.3d 37, 70 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Accordingly, under this provision, a defendant is the prevailing party if it successfully defends the case, which is typically upon "obtaining a take-nothing judgment on the main issue or issues in the case." *Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 838 (Tex. App.—Houston [14th Dist.] 2017, pet. filed).

We agree, and hold that because the CCRs do not limit the definition of prevailing party to a successful plaintiff, Mira Vista and the Gaudins can be prevailing parties in successfully defending against the Severses' claims under the CCRs, regardless of whether they recovered any damages or obtained other relief. *See id.*; *Cambio v. Briers*, No. 01-10-00807-CV, 2015 WL 2229274, at *4 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.) ("Although a plaintiff who receives a finding of liability but no damages is not a prevailing party for the purposes of attorney's fees, a defendant who successfully defends against a breach of contract

40

claim may be entitled to attorney's fees, even if the defendant is not awarded damages." (citation omitted)).

### 1. Mira Vista "shall" recover attorney's fees under the CCRs as the "prevailing party."

Mira Vista received a favorable disposition on the merits by obtaining a take-nothing summary judgment on the Severses' claims for breach of contract, promissory estoppel, negligent misrepresentation, breach of fiduciary duty, and private nuisance, which resulted in the dismissal of said claims with prejudice. This changed the legal relationship between the Severses and Mira Vista. *See Epps v. Fowler*, 351 S.W.3d 862, 868–69 (Tex. 2011) (holding a defendant who obtains a dismissal of claims with prejudice is a prevailing party because the res judicata effect works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit and "the defendant can never again be sued by the plaintiff or its privies for claims arising out of the same subject matter"). Thus, Mira Vista was the prevailing party and the Severses were the nonprevailing party under the CCRs. *Tex. State Teachers Ass'n v. Garland ISD*, 489 U.S. 782, 792–93, 109 S. Ct. 1486, 1494 (1989) (explaining in context of statute providing recovery of attorney's fees to prevailing party that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties"); *Intercontinental Grp. P'ship*, 295 S.W.3d at 652 ("We agree with the United States Supreme Court, which holds

41

that to prevail, a claimant must obtain actual and meaningful relief, something that materially alters the parties' legal relationship.").

Nevertheless, the Severses argue that Mira Vista cannot be a prevailing party because Mira Vista failed to obtain any meaningful relief from the court—damages or equitable relief—to thereby alter the legal relationship between the Severses and Mira Vista. We cannot agree.

The Severses conflate a prevailing-party analysis for a successful *defendant* with a prevailing-party analysis for a successful *plaintiff*. It is true that courts reviewing cases of plaintiffs who have obtained favorable findings on their claims but were not awarded damages have consistently concluded that the plaintiffs were not "prevailing parties." *See, e.g.*, *Intercontinental Grp. P'ship*, 295 S.W.3d at 655–56 (holding "[a] stand-alone finding on breach confers no benefit whatsoever" and a "zero on damages necessarily zeroes out 'prevailing party' status" for plaintiff); *Cont'l Healthcare, Inc. v. Remedy Therapy Staffing, PLLC*, No. 03-14-00464-CV, 2016 WL 6068258, at *6 (Tex. App.—Austin Oct. 14, 2016, no pet.) (mem. op.) (reversing award of attorney's fees and rendering judgment in favor of defendant because jury awarded plaintiff no damages for breach of contract).

But these cases are inapposite because the instant case presents a question of whether a *defendant* obtaining a take nothing judgment is a prevailing party. In such cases, courts have consistently held that a defendant is considered a prevailing party by successfully defending and obtaining a take-nothing judgment on the plaintiff's

42

breach-of-contract claim, regardless of whether the defendant obtains any damages or other relief from the court. *See Chevron Phillips Chem. Co. LP*, 346 S.W.3d at 70 (holding that when the "quoted contractual provision entitling a 'prevailing party' to recover attorneys' fees does not distinguish between successful prosecution and successful defense of a claim" a counter-defendant was "entitled to some fees because it successfully defended [counter-plaintiff's] breach-of-contract counterclaim"); *Range*, 530 S.W.3d at 838 ("A defendant is the prevailing party if it successfully defends the case, typically by 'obtaining a take-nothing judgment on the main issue or issues in the case.'") quoting *Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 670 (Tex. App.—Houston [14th Dist.] 2013, pet. denied))); *Cambio*, 2015 WL 2229274, at *4 ("Although a plaintiff who receives a finding of liability but no damages is not a prevailing party for the purposes of attorney's fees, a defendant who successfully defends against a breach of contract claim may be entitled to attorney's fees, even if the defendant is not awarded damages." (citation omitted)).

Therefore, we hold that Mira Vista was the prevailing party and the Severses were the nonprevailing party under the CCRs, so Mira Vista "shall" be entitled to recover their reasonable attorney's fees from the Severses. *See Cambio*, 2015 WL 2229274, at *4 ("Having successfully defended against appellees' breach of contract claim based upon the Consent Agreement, [appellant] is entitled to attorney's fees under the plain language of the Consent Agreement."); *Bankcard Processing Intern., L.L.C. v. United Bus. Servs., L.P.*, No. 01-10-01079-CV, 2012 WL 3776024, at *9 (Tex.

43

App.—Houston [1st Dist.] Aug. 30, 2012, pet. denied) (mem. op.) (reversing trial court's denial of defendant's request for attorney's fees and reasoning that defendant "was the prevailing party because it successfully defended this claim and the jury found that it did not breach the contract," that "[t]he parties' contract states that the prevailing party 'shall' be entitled to recover attorney's fees," and that "[u]nder the parties' contract, [defendant] was entitled to attorney's fees"); *Bhatia*, 396 S.W.3d at 671 (parties prevailed when they received take-nothing judgment in their favor); *Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 630 (Tex. App.—San Antonio 2011, no pet.) (defendants who obtained take-nothing judgment in their favor were prevailing parties entitled to recover attorney's fees under parties' agreement); *Old HH, Ltd. v. Henderson*, No. 03-10-00129-CV, 2011 WL 6118570, at *4 (Tex. App.—Austin Dec. 9, 2011, no pet.) (mem. op.) (defendants who prevailed in trial court when court rendered take-nothing judgment in their favor were entitled under "prevailing party" clause of contract to attorney's fees for defense of claims asserted against them); *Silver Lion, Inc.*, 2010 WL 2025749, at *18 (defendant awarded take-nothing judgment on breach-of-contract claim was prevailing party entitled, under parties' agreement, to recover attorney's fees for successfully defending against claim).

Accordingly, the trial court erred in denying Mira Vista's counterclaim for attorney's fees. We sustain Mira Vista's sole issue.

**2. To recover under the CCRs as a "prevailing party," the Gaudins must show that the Severses' nonsuit without prejudice was to avoid an unfavorable ruling on the merits.**

But what is the effect of the Severses' nonsuit without prejudice? Did it dispose of the Gaudins' counterclaim and render the Gaudins unable to recover their attorney's fees as a "prevailing party"?

**a. The nonsuit without prejudice is only effective as to the Severses' claims and is not an adjudication on the merits of the Gaudins' counterclaim for attorney's fees.**

It is blackletter law in Texas that although a plaintiff may nonsuit his claims at any time before introducing all of his evidence other than rebuttal evidence, a nonsuit is not effective with regard to a defendant's pending claims for affirmative relief.[12] Tex. R. Civ. P. 162; s*ee Epps*, 351 S.W.3d at 868. "For example, a plaintiff's nonsuit cannot extinguish a defendant's counterclaim for costs and attorney's fees." *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008). Thus, "[i]f the defendant has a pending claim for affirmative relief, the plaintiff's nonsuit is effective for its own claims, but not for those of the defendant." *Le v. Kilpatrick*, 112 S.W.3d 631, 633 (Tex. App.—Tyler 2003, no pet.); *see also Klein v. Dooley*, 949 S.W.2d 307, 307 (Tex. 1997) ("A

_____

[12]"To assert a claim for affirmative relief, a defendant must assert a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation, or relief." *In re Riggs*, 315 S.W.3d 613, 615 (Tex. App.—Fort Worth 2010, orig. proceeding); *see also In re C.A.S.*, 128 S.W.3d 681, 686 (Tex. App.—Dallas 2003, no pet.) ("An affirmative claim, stated in an answer, for recovery of attorney's fees for preparation and prosecution of a defense constitutes a counterclaim.").

plaintiff's voluntary nonsuit does not affect a defendant's pending counterclaim for costs and attorney's fees.").

So, although the Severses nonsuited their claims against the Gaudins, the nonsuit was ineffective to dispose of the Gaudins' pending counterclaim for attorney's fees. *See Villafani*, 251 S.W.3d at 469. Therefore, we hold that the trial court's June 25, 2015 order, which seemingly dismissed the Gaudins' counterclaim for attorney's fees, was erroneous.

But even though the trial court signed the erroneous order, the parties continued to brief the issue: the Gaudins' filed a motion to vacate and the Severses' filed a motion for summary judgment. Moreover, the trial court conducted a September 25, 2015 hearing and held a February 19, 2016 status conference—both of which concerned the Gaudins' and Mira Vista's counterclaims for attorney's fees—and extensively addressed the counterclaims for attorney's fees in its December 21, 2015 letter before ultimately disposing of the issue in the April 19, 2016 final order. Thus, although the trial court's order granting the Severses' nonsuit and purportedly dismissing the Gaudins' counterclaim for attorney's fees (as well as its letter denying the Gaudins' motion to vacate) was in error, we conclude that the error is harmless because the Gaudins' counterclaim for attorney's fees was extensively briefed and argued and was disposed of on the merits in the April 19, 2016 final order.

Accordingly, we overrule the Gaudins' first issue.

### b. The Severses' nonsuit without prejudice was not to avoid an unfavorable ruling on the merits.

We now analyze whether the Gaudins were a "prevailing party" under the CCRs following the Severses' nonsuit without prejudice. The Gaudins essentially contend that the Severses' lawsuit against them was baseless from the outset and that this was admitted by the Severses and their counsel. The Severses respond that that none of the *Epps* factors are present in this case and that their lawsuit had merit and the decision to nonsuit without prejudice was not to avoid an unfavorable ruling.

As explained above, "a defendant is a prevailing party when a plaintiff nonsuits a case *with* prejudice" because a nonsuit with prejudice is tantamount to a judgment on the merits and its res-judicata effect thereby permanently and inalterably changes the legal relationship among the parties. *Epps*, 351 S.W.3d at 868–69. If a plaintiff nonsuits a case *without* prejudice, however, the defendant is generally not considered a prevailing party because "a nonsuit without prejudice works no such change in the parties' legal relationship; typically, the plaintiff remains free to re-file the same claims seeking the same relief." *Id.* (citing *Klein*, 949 S.W.2d at 307). Because courts disfavor nonsuits that are filed "to circumvent unfavorable legal restrictions or rulings," the *Epps* court held that "a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." *Id.* at 870. The *Epps* court provided some factors for courts to consider in analyzing whether a plaintiff has

nonsuited to avoid an unfavorable ruling, including (1) the timing of the nonsuit, (2) if the plaintiff has an unexcused failure to obtain discovery of evidence that might disprove its claim, (3) the failure to designate material or expert witnesses, and (4) the existence of other procedural obstacles, such as the inability to join necessary parties. *Id.* at 870–71.

We do not find any of the *Epps* factors to be present in this case. First, the Severses' notice of nonsuit without prejudice was not filed after the Gaudins filed a motion for summary judgment. Second, there is no mention—let alone evidence or citations to the record—from the Gaudins that establish that the Severses had failed to respond to requests for admission or other discovery requests, which would thereby support an adverse judgment. Third, there is no argument or evidence to support that the Severses had failed to identify experts or critical witnesses that would make ultimate recovery impossible. Finally, there is no argument or evidence to support that the Severses filed their nonsuit without prejudice because of some other procedural obstacle that would have defeated their claims against the Gaudins.

Thus, our analysis of the *Epps* factors supports the trial court's implied finding that the Gaudins were not a prevailing party because the Severses' nonsuit without prejudice was not to avoid an unfavorable ruling on the merits. *Accord Referente*, 477 S.W.3d at 886–87 (affirming trial court's finding that nonsuit without prejudice was taken to avoid unfavorable ruling when nonsuit was filed after a motion for summary judgment was filed).

Despite the absence of the *Epps* factors, the Gaudins direct us to a statement from the Severses' counsel made during the second TRO hearing, a statement in Mr. Severs's deposition, and a statement in Mrs. Severs's deposition that she was unaware of the Gaudins' counterclaim for attorney's fees to support that the Severses knowingly filed meritless claims against the Gaudins and only filed the nonsuit to avoid an unfavorable ruling. We cannot agree.

It is clear from the record that the Gaudins did not comply with section one of the Guidelines because the Gaudins failed to submit their building plans to the ACC prior to submission to the City of Fort Worth and beginning construction. Indeed, Mira Vista fined the Gaudins' builder for this action and halted construction. Therefore, we conclude that the Severses' claims that the Gaudins violated the Guidelines were not baseless.

In light of the foregoing, we hold that the Severses did not bring a baseless claim and that the filing of their nonsuit without prejudice was not to avoid an unfavorable judgment and thus the Gaudins were not a prevailing party on that basis.

### 3. The Gaudins are not a prevailing party following Mira Vista's take-nothing final judgment

The question remains whether the take-nothing summary judgment on the Severses' claims *against Mira Vista* renders the Gaudins a prevailing party. That is, the Gaudins argue that even though the Severses took a nonsuit without prejudice, they still maintained all of their same claims and relief requested—including relief against

the Gaudins—so, the Gaudins can essentially stand in Mira Vista's shoes as a prevailing party. Put differently, because Mira Vista is a prevailing party, the Gaudins are a prevailing party. Although we follow the logic of the argument, the Gaudins do not present us with any case, nor have we located any case, that has found a co-defendant who was nonsuited without prejudice to be a prevailing party because its former co-defendant subsequently obtained a take-nothing judgment on the merits. Moreover, we are concerned that for us to resolve this issue may require an impermissible advisory opinion.[13] *See Schecter*, 214 S.W.3d at 121.

Therefore, we hold that the Gaudins are not a prevailing party as a result of the judgment in favor of Mira Vista.

## III. Section 37.009 of the Texas Civil Practice and Remedies Code

Finally, we consider whether the Gaudins were entitled to their reasonable attorney's fees under chapter 37 of the civil practice and remedies code.

### A. Standard of Review and Applicable Law

We review de novo whether attorney's fees are recoverable under statute. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). "When a statute states that a trial court 'may' award attorney's fees, such an award is discretionary and we review the trial court's ruling under the abuse of discretion standard." *Playoff Corp. v.*

---

[13]That is, the resolution would require us to decide the effect of the judgment in favor of Mira Vista should the Severses hypothetically file a new lawsuit against the Gaudins.

*Blackwell*, 300 S.W.3d 451, 458–59 (Tex. App.—Fort Worth 2009, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

In a suit for declaratory judgment, a trial court has discretion to award a party its costs and reasonable attorney's fees *vel non* if it is equitable and just: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Indeed, under section 37.009, a trial court has discretion to even award attorney's fees to a nonprevailing party. *See Moosavideen v. Garrett*, 300 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("[T]he trial court is not required to award attorney's fees to the prevailing party in a declaratory judgment, and, indeed, may award attorney's fees to the nonprevailing party."). Thus, whether the Gaudins requested independent declaratory relief in their counterclaims or simply requested attorney's fees for defending against the Severses' declaratory judgment requests is of no moment to our analysis. *See Sierra Crest Homeowners Ass'n, Inc. v. Villalobos*, 527 S.W.3d 235, 249 (Tex. App.—El Paso 2016, no pet.).

**B.    Analysis**

After erroneously signing an order granting the Severses' nonsuit and denying the Gaudins' counterclaim for attorney's fees, the trial court nevertheless considered the Gaudins' motion to vacate, the Severses' no-evidence motion for summary

51

judgment, the Gaudins' response and Severses' reply, and held a September 25, 2015 hearing and sent a December 21, 2015 letter to the parties, all to specifically address the specific issue of attorney's fees. Then, the trial court conducted a February 19, 2016 status conference and signed an order on April 19, 2016, stating that after considering the pleadings, evidence, and arguments of counsel, it was denying all requests for attorney's fees. In its December 21, 2015 letter, the trial court explained that the Gaudins did not "prevail" because they "did not 'win' any compensation other than the permission to continue construction on their home which was already in progress." Thus, the trial court stated that because the Gaudins did not prevail and "considering the equities in this case," it declined to award attorney's fees to the Gaudins.

Based on the foregoing, it is clear that the trial court did not act erroneously or without reference to guiding principles. First, we already held above that the Gaudins were not a "prevailing party" under the plain language of the CCRs. Second, we also noted that the record supported that the Gaudins failed to submit their building plans to Mira Vista before beginning construction. Finally, the trial court's actions holding multiple hearings, receiving evidence, and considering pleadings and arguments of counsel, coupled with the three-page letter ruling demonstrate that the trial court was deliberate in its analysis and ultimately in its decision to deny the Gaudins' request for attorney's fees.

On this record, we conclude that the trial court did not abuse its discretion in denying the Gaudins' request for attorney's fees under section 37.009 of the civil practice and remedies code. *See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 495 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We overrule the Gaudins' second issue.

## IV. Remand for Hearing on Amount of Reasonable Attorney's Fees

Because we sustain Mira Vista's issue challenging the denial of its counterclaim for attorney's fees, we remand this case to the trial court for all necessary proceedings to determine an amount of reasonable attorney's fees under section 12.05 of the CCRs. *See Mira Mar Dev. Corp. v. City of Coppell, Tex.*, 421 S.W.3d 74, 105–06 (Tex. App.—Dallas 2013, no pet.).

## <u>CONCLUSION</u>

Having overruled all of the Severses' issues, having sustained Mira Vista's sole issue, and having overruled the Gaudins' issues, we affirm the judgment in part and reverse and remand only for a determination of an amount of Mira Vista's reasonable attorney's fees.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

Delivered: September 6, 2018