Opinion filed October 31, 2024



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00307-CV

_____

**JARROD E. DAVIS A/K/A JARED E. DAVIS AND JAMES BRIAN HILLMAN, Appellants**

**V.**

**TRINITY D. CRAWFORD, INDIVIDUALLY AND ON BEHALF OF PRECISION FRAC, LLC, BLUE GOLD ENERGY, LLC, BLUE GOLD ENERGY BARSTOW, LLC, AND KARMIC ENERGY, LLC; CHAD A. CARSON, INDIVIDUALLY AND ON BEHALF OF PRECISION FRAC, LLC, BLUE GOLD ENERGY, LLC, BLUE GOLD ENERGY BARSTOW, LLC, AND KARMIC ENERGY, LLC; KALEE VANMETER; DONNIE SEBURG; BLUE GOLD ENERGY BARSTOW, LLC; AND WEST TEXAS WATER SOLUTIONS, LLC, Appellees**

On Appeal from the 142nd District Court

Midland County, Texas

Trial Court Cause No. CV54756

**O P I N I O N**

This an appeal from a summary judgment granted on claims asserted by Appellants Jarrod Davis and Brian Hillman. In this matter, we turn our attention to a familiar dispute between the owners and employees of Precision Frac, LLC, as well as several other enterprises that are owned by the parties. *See Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.); *Crawford v. Davis*, No. 11-18-00306-CV, 2019 WL 2147727 (Tex. App.—Eastland May 16, 2019, no pet.) (mem. op.). We affirm in part, and we reverse and remand in part.

*Background Facts*

In 2015, Davis joined with Appellees Trinity Crawford and Chad Carson to form Precision Frac, a company that provided water transfer products and services to the fracking industry. Appellees Kalee VanMeter and Donnie Seburg were employees of Precision Frac.

In 2017, Davis, VanMeter, and Hillman began working on a new venture that involved the creation of a series of water stations. Because each location would likely require a different set of investors, they planned to set up separate entities for each water station. According to Davis, the parties agreed that each water station would operate as a wholly owned subsidiary of a company known as WLM Energy, LLC, of which VanMeter was the sole controlling member.

The first proposed project was near Barstow, Texas. Hillman worked on the Barstow project as a "landman." He claimed that, in return for his services,

2

VanMeter and Davis had told him that Dahlia Land Services, LLC, a company owned by Hillman, would receive a 5% interest in the project.[1]

On October 31, 2017, an entity described as Blue Gold Energy Barstow, LLC entered into an agreement with two landowners for purchase of the real property to be used for the Barstow project. Davis signed the agreement on behalf of Blue Gold. However, Blue Gold did not exist at the time. Davis maintained that he then spent approximately $300,000 developing a pond on the property.

As a result of disputes over Davis's management of Precision Frac, the relationship between Davis and Appellees began to deteriorate rapidly. On June 29, 2018, Seburg, VanMeter, Crawford, and Carson filed a certificate of formation for Blue Gold Energy Barstow, LLC with the Texas Secretary of State. The certificate did not name Davis as one of the managers.

Crawford and others filed suit against Davis on July 30, 2018, alleging that Davis had been using Precision Frac credit cards and funds to finance purchases of personal vehicles, fund a gambling habit, and pay down personal credit card debts. *Crawford*, 2019 WL 2147727, at *1. Thereafter, on August 22, 2018, the trial court granted Crawford's request for a temporary restraining order and stripped Davis of control of Precision Frac's assets, leaving Crawford in control of the company. *Id*.

Davis counterclaimed, asserting multiple causes of action against Crawford, Carson, VanMeter, and Seburg, alleging among other things that he had been defamed by them. *Id*. In response, Crawford filed a motion to dismiss the counterclaims under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV.

---

[1]Dahlia is not a party to the lawsuit. However, Appellees' pleadings do not raise the issue of Hillman's capacity to bring suit on behalf of Dahlia. *See* TEX. R. CIV. P. 93(2) (requiring a verified pleading in support of a denial of plaintiff's capacity to bring suit). As such, any question of Hillman's capacity to bring suit on behalf of Dahlia has been waived. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2022 & Supp. 2024). The trial court granted the motion in part. *Crawford*, 2019 WL 2147727, at \*1. On the day after the trial court's order was signed, Crawford, along with several other parties, filed an interlocutory appeal of the trial court's ruling on the TCPA motion.[2] As a result, the underlying lawsuit was stayed for the duration of the appeal. *See* CIV. PRAC. & REM. § 51.014 (b).

Less than two weeks after the trial court ruled on the TCPA motion to dismiss, Davis and Hillman filed a separate lawsuit against Crawford, Carson, VanMeter, and Seburg. In the second lawsuit, Davis alleged that Appellees formed Blue Gold without including him as a controlling member, and that they had thereby converted the Barstow water project for their own use while cutting him out of the business. Davis also alleged that Seburg, VanMeter, and Crawford had formed a new company called West Texas Water Solutions, LLC for the same purpose. Additionally, Hillman alleged that Appellees failed to honor their commitment to provide him with a 5% interest in the business per Hillman's arrangement with VanMeter.

Among other things, the second lawsuit requested an injunction requiring Appellees to deposit all funds from the Barstow water project into the registry of the court. However, the trial court indicated that it would not grant injunctive relief as a result of the automatic stay. Davis then filed a motion to dismiss the appeal of the first lawsuit, requesting that we rule against him. *Crawford*, 2019 WL 2147727, at \*2. Based on this request, we rendered judgment on the counterclaims that were the

---

[2]An aggrieved party may file an interlocutory appeal from an order denying a TCPA motion. CIV. PRAC. & REM. § 51.014(a).

4

subject of the TCPA order and remanded the case to the trial court for a determination of attorney's fees and sanctions.[3] *Id.* at *3.

In the meantime, beginning on September 4, 2018, and continuing through 2020, a series of judgments were rendered against Precision Frac, effectively putting it out of business. Crawford maintains that, even though Precision Frac was within his control at the time, the company was unable to defend against these lawsuits because it had limited assets, and no inventory from which it could make sales and generate ongoing revenue.

The trial court consolidated the two lawsuits, and Appellees filed motions for summary judgment. The trial court granted the summary judgment motions and rendered a final judgment, awarding Crawford $30,000 for attorney's fees in connection with the remand of the TCPA motion to dismiss.[4] In this appeal, Hillman and Davis raise various issues arising out of the trial court's final judgment.

*Motion for Summary Judgment on Davis's Claims*

In his first issue, Davis complains that the motion for summary judgment on his claims against Appellees failed "to identify or address each cause of action." We have examined the motion and conclude that it fails to satisfy the requirements of Rule 166a of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a.

Rule 166a(c) provides that a motion for summary judgment "shall state the specific grounds therefor" and demonstrate that "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." *Id.* Because the issues must be "expressly set out in the motion," a defendant who seeks

---

[3]A movant who prevails on a TCPA motion to dismiss is entitled to an award of court costs and reasonable attorney's fees. CIV. PRAC. & REM. § 27.009(a)(1). Under appropriate circumstances, a trial court may also award sanctions against the party who brought the legal action. *Id.* § 27.009(a)(2).

[4]The remaining claims in the consolidated litigation were nonsuited before the final judgment was rendered.

a summary judgment on a plaintiff's cause of action must establish "that there is no genuine issue of material fact concerning one or more of the essential elements of plaintiff's cause of action." *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990). The motion must therefore identify or address the particular causes of action to which it is directed, as well as the elements of those causes of action. *Id.*; *see also Cruz v. Schell, Beene & Vaughan, L.L.P.*, No. 11-18-00075-CV, 1999 WL 33748017, at *7 (Tex. App.—Eastland Aug. 5, 1999, no pet.) ("[W]e hold that summary judgment was erroneous as to the cause of action for intentional infliction of emotional distress because the defendants did not identify or address this cause of action in their motion for summary judgment."). Furthermore, "to dispose of the plaintiff's entire case, a defendant's motion for summary judgment must identify or address each of the plaintiff's claims and the essential elements of those claims on which it contends that no genuine issue of material fact exists." *Garza v. CTX Mortg. Co.*, 285 S.W.3d 919, 923 (Tex. App.—Dallas 2009, no pet.) (citing *Black*, 797 S.W.2d at 27); *see also Prather v. Callon Petrol. Operating Co.*, 648 S.W.3d 618, 627 (Tex. App.—Eastland 2022, no pet.) (it is improper for a trial court to dispose of a party's claim by summary judgment "when the claim was not raised or addressed in a summary judgment motion").

In this case, Davis asserted various causes of action against Appellees for breach of fiduciary duty, breach of contract, conversion, theft of property, conspiracy, and unjust enrichment. For example, Davis's claim for breach of fiduciary duty against Crawford and Carson asserted that they failed to defend lawsuits filed against Precision Frac.[5] Davis asserted a claim for breach of fiduciary duty against Crawford, Carson, VanMeter, and Seburg for forming Barstow without

---

[5]Davis asserted all of his claims on his own behalf and on behalf of Precision Frac.

him. Davis also asserted a breach of contract cause of action against Crawford, Carson, VanMeter, and Seburg for using confidential information and trade secrets to compete with Precision Frac.

Appellees' motion for summary judgment on all Davis's claims against them maintains that "Davis's claims can be divided into one of two categories." As described in the motion, the first category involves claims "arising out of the alleged failure to defend Precision Frac from various lawsuits," and the second category involves claims that Appellees "have moved on to operate other businesses." The motion then generally avers, "[e]ach of these claims is negated by one simple fact[:] Precision Frac was broke, insolvent, and bankrupt." The motion goes on to attempt to negate the propositions that Davis allegedly advances in each category, arguing that (1) a member of a limited liability company is not liable for its debts, (2) there was no duty to defend Precision Frac because no funds were available to pay for the defense, (3) Precision Frac had no means to continue operations, and (4) all of the covenants not to compete are unenforceable.

While the motion against Davis makes passing references to Appellees' duties and the issue of "proximate cause," it does not mention any of the specific causes of action that were asserted, nor does it describe the particular elements of those causes of action that are relevant to the motion. We conclude that the sweeping generalizations in Appellees' motion for summary judgment on Davis's claims are insufficient to satisfy the requirements of Rule 166a because they fail to address Davis's case on a claim-by-claim and element-by-element basis, as they must. *See Garza*, 285 S.W.3d at 923. As such, the trial court erred when it granted the motion for summary judgment on Davis's causes of action, and we sustain the first issue raised by Davis. *See Black*, 797 S.W.2d at 27.

7

*Motion for Summary Judgment on Hillman's Claims*

Hillman maintains that the trial court erred in granting summary judgment on Appellees' causes of action for breach of fiduciary duty, conspiracy, and unjust enrichment. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Heirs of Del Real v. Eason*, 374 S.W.3d 483, 486 (Tex. App.—Eastland 2012, no pet.). As such, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751.

"A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). Thus, "a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch*, 118 S.W.3d at 751; *Tex. Petrol. Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 840 (Tex. App.—Eastland 2022, no pet.). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.* 650 S.W.2d 61, 63 (Tex. 1983)); *McMillan*, 641 S.W.3d at 840. "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Havner*, 953 S.W.2d at 711); *McMillan*, 641 S.W.3d at 840.

A. *The Underlying Contract*

In his first issue, Hillman complains that the trial court erred in granting a traditional motion for summary judgment based on the allegation that "the 'underlying contract' was invalid and unenforceable." Hillman does not assert a cause of action for breach of contract in his pleadings. However, Appellees maintain that, because Precision Frac and Davis were not parties to the Barstow contract, Hillman can have no "subcontract," and that "the very foundation of Hillman's claims" has therefore been conclusively negated.

9

This portion of Appellees' motion for summary judgment on Hillman's claims again fails to explicitly state how the absence of a contract between Precision Frac or Davis negates any particular elements of the causes of action pled by Hillman. *See Garza*, 285 S.W.3d at 923. Furthermore, even if Appellees correctly identified the causes of action and elements to which this argument applies, Hillman filed an affidavit with his response attesting that VanMeter had also agreed to provide his company, Dahlia Land Services, LLC, with a 5% interest in the Barstow water project. As such, Hillman has raised a genuine issue of material fact as to whether he had entered into an arrangement whereby he would receive an interest in the project.

We sustain Hillman's first issue.

B. *Breach of Fiduciary Duty*

In his second issue, Hillman complains that the trial court erred in granting a no-evidence motion for summary judgment on his claim for breach of fiduciary duty. "[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *see also McLeod v. McLeod*, 644 S.W.3d 792, 804 (Tex. App.—Eastland 2022, no pet.); *Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 802 (Tex. App.—Eastland 2021, no pet.).

In their motion for summary judgment, Appellees asserted that there is no evidence that VanMeter or any other person owed a fiduciary duty to Hillman. As such, it was incumbent on Hillman to raise a genuine issue of material fact on the existence of a fiduciary duty. *See King Ranch*, 118 S.W.3d at 751 (Tex. 1992); *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am.,*

10

*Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002) ("The existence of a confidential relationship is usually a question of fact.").

In Texas, "[c]ertain formal relationships create fiduciary relationships as a matter of law." *Dipprey*, 637 S.W.3d at 802 (quoting *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 703 (Tex. App.—Fort Worth 2018, pet. denied)). Examples of formal fiduciary relationships include the attorney-client relationship, partnerships, and trust relationships. *Dipprey*, 637 S.W.3d at 802; *see Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938) (recognizing that a partnership imposes a formal fiduciary relationship). Additionally, a formal fiduciary relationship exists between joint venturers. *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 264 (Tex. 1951) ("The relationship between joint adventurers, like that existing between partners, is fiduciary in character.") (quoting 30 Am. Jur. 2d *Joint Adventurers* § 34). In such situations, the fiduciary duty applies when the parties are engaged in the joint venture as well as when they are about to assume the relationship. *Id.* at 264.

While Texas courts have imposed broad-based fiduciary duties on partners, they have not done the same for members of a limited liability company (LLC). *See McLeod*, 644 S.W.3d at 804.

Additionally, some informal relationships, "whether moral, social, domestic, or purely personal, may also give rise to fiduciary duties where one person trusts in and relies on another." *Id.* at 804. "But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Id.* (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)).

Courts do not create fiduciary relationships lightly. *Id.* For example, a fiduciary relationship will not be imposed on the parties to a business transaction

11

unless the relationship existed "prior to, and apart from, the agreement made the basis of the suit." *Id.* (quoting *Swanson*, 959 S.W.2d at 177). As such, mere subjective trust does not transform an arms-length transaction into an informal fiduciary relationship. *Id.*

Hillman's affidavit in support of his response to the motion for summary judgment stated that he, VanMeter, and Davis made plans "to be partners in a company which produced water to be sold to oil company [sic] for oilfield needs." He also attested that he and VanMeter spoke on an almost daily basis, that they texted frequently, and they placed confidence in each other. Additionally, Hillman attested that, in exchange for his work on the project, Dahlia Land Services, LLC "would receive 5% of all money from the business venture."

Hillman maintains that managers such as VanMeter, who exercise sole control over an LLC, owe a fiduciary duty to minority owners. In support of his position, Hillman points to two cases from the First Court of Appeals: *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012), *set aside and remanded per settlement*, 2013 WL 12499073 (Tex. 2013) and *Strebel v. Wimberly*, 371 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

In *Allen*, a former minority interest holder in a limited liability company brought a claim for breach of fiduciary duty against the manager and majority owner, claiming that the manager severely undervalued his minority interest when it was sold back to the company. 367 S.W.3d at 365. In assessing whether it should impose a fiduciary duty under these circumstances, the First Court of Appeals noted that partners in a general partnership owe each other fiduciary duties, and that general partners in a limited partnership likewise owe fiduciary duties to the limited partners as a result of their control over the entity. *Id.* at 391 (citing *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995); *Crenshaw v. Swenson*, 611 S.W.2d 886,

890 (Tex. App.—Austin 1980, writ ref'd n.r.e.)). The court then explained that the characteristics of LLCs are similar to partnerships inasmuch as they can either be run collectively by all of their members or by one or more manager-members. *Allen*, 367 S.W.3d at 391. Because of this similarity, it imposed a fiduciary duty on the sole member-manager of the LLC. *Id.* at 392. This duty was based on the member-manager's exercise of a "high degree of control" that was similar to that of a general partner in a limited partnership. *Id.*

In *Strebel*, the First Court of Appeals likewise imposed a fiduciary duty on the managing member of a Delaware LLC, although in that case, the agreement organizing the LLC explicitly stated that the managers thereof owed a fiduciary duty to the company and its members. 371 S.W.3d at 278.

In support of their assertion that VanMeter does not owe a fiduciary obligation to Hillman, Appellees point to *Meyer v. Cathey*, 167 S.W.3d 327 (Tex. 2005). In *Meyer*, the Texas Supreme Court held that business associates who had worked on a number of arms-length real estate projects together had not thereby created a fiduciary relationship. *Id.* at 331. Furthermore, there was evidence that the previous contracts between the parties had expressly disclaimed the creation of any fiduciary duties. *Id.*

The plaintiff in *Meyer* alleged an informal fiduciary relationship between himself and his business partner. 167 S.W.3d at 330–31. By contrast, Hillman does not allege that an informal fiduciary relationship exists. As such, the holding in that case is of limited use in resolving Hillman's claim of a formal fiduciary obligation arising out of the parties' roles in the management and operation of WLM. In that regard, we agree with the First Court of Appeals that the relationship between a managing member of an LLC and a nonmanaging member is similar to that of a general partner/limited partner relationship, and that such an arrangement thereby

13

creates a fiduciary obligation on the part of the managing member. *Allen*, 367 S.W.3d at 392.

However, our recognition of such a duty does not resolve the issue in favor of Hillman as a matter of law. At trial, it will still be incumbent on Hillman to convince the finder of fact that Dahlia was indeed a 5% owner of WLM, as he claims.[6] If he is unable to do so, the trial court may conclude that VanMeter had no fiduciary obligations to Hillman or Dahlia.

In concluding that managing members of an LLC owe a fiduciary obligation to nonmanaging members, we are aware that the Texas Business and Organizations Code expressly permits a company agreement to limit the fiduciary obligations of a member or manager. *See* TEX. BUS. ORG. CODE ANN. § 101.401 (West 2020). Because there are no claims of such a limitation in this case, we do not comment on the effects of any contractual limitations that might apply to the fiduciary relationships between controlling managers and noncontrolling members of an LLC.

Appellees' motion for summary judgment as to Hillman's claims also alleged that there was no evidence that Crawford, Carson, or Seburg owed Hillman a fiduciary duty, despite Hillman's pleadings. Hillman's response did not submit evidence of the fiduciary duties of these parties. Consequently, the trial court properly granted summary judgment on Hillman's claims for breach of fiduciary duty against Crawford, Carson, and Seburg. *See* TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.").

---

[6]The record contains no evidence of a written agreement creating Dahlia's interest in WLM. The affidavit of Davis suggests that WLM's company agreement was still being drafted when the relationship between the parties began to deteriorate in early 2018. Nevertheless, a company agreement for an LLC can be formed based on oral (or even implied) arrangements. TEX. BUS. ORG. CODE § 101.001(1) (West Supp. 2024). As such, the summary judgment evidence raises a fact issue as to whether Dahlia, Hillman's company, owned a 5% interest in WLM.

We sustain Hillman's second issue with respect to the cause of action for breach of fiduciary duty against VanMeter and overrule Hillman's second issue with respect to his causes of action for breach of fiduciary duty against Crawford, Carson, and Seburg.

## C. *Conspiracy*

In his third issue, Hillman complains that the trial court erred when it granted summary judgment on his cause of action for conspiracy.

The elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citing 15A C.J.S. *Conspiracy* §1(2) (1967)). Civil conspiracy is also a derivative tort, "meaning it depends on some underlying tort or other illegal act." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). Thus, the conspiracy claim is connected to the underlying tort and survives or falls alongside it. *Id.* at 141.

Hillman bases his cause of action for conspiracy on VanMeter's underlying fiduciary duty, asserting that Crawford, Carson, VanMeter, and Seburg "conspired in VanMeter's breach of fiduciary duty she owed to Hillman." In their motion, Appellees noted that conspiracy is a derivative tort and alleged that, because there is no evidence of the "underlying tort," there is no evidence to support a civil conspiracy claim.

Because we have concluded that Hillman raised a genuine issue of material fact as to VanMeter's fiduciary duty, we also conclude that there is more than a scintilla of evidence supporting an underlying breach of fiduciary duty in connection

with Hillman's claim for civil conspiracy.[7]  Accordingly, we sustain Hillman's third issue.

### D. *Unjust Enrichment*

In his fourth issue, Hillman asserts that the trial court erred when it granted a no-evidence motion for summary judgment on Hillman's unjust-enrichment claim. In support of their no-evidence motion, Appellees asserted two independent grounds for summary judgment.

First, Appellees argue that, like conspiracy, unjust enrichment is a derivative action which requires an underlying tort.  In support of this argument, they cite a series of Fort Worth Court of Appeals cases, which hold that unjust enrichment "is not an independent cause of action."  *Landers v. Landers*, No. 02-19-00303-CV, 2021 WL 1570011, at *8 (Tex. App.—Fort Worth Apr. 22, 2021, no pet.) (mem. op.) (quoting *Davis v. OneWest Bank N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.)); *see also Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.); *Lawry v. Pecan Plantation Owners Ass'n, Inc.*, No. 02-15-00079-CV, 2016 WL 4395777, at *6 (Tex. App.—Fort Worth Aug. 18, 2016, no pet.) (mem. op.); *Hulen v. Hamilton*, No. 02-06-00288-CV, 2008 WL 553812, at *4 (Tex. App.—Fort Worth Feb. 28, 2008, no pet.) (mem. op.); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007).  Appellees maintain that the term "unjust enrichment" describes a remedy, and that Hillman must therefore allege a more particular cause of action in order to recover under this

---

[7]Although we have concluded that VanMeter was the only party that owed a fiduciary duty, Crawford, Carson, and Seberg may still be implicated in a conspiracy for the breach of that duty. *See Massey*, 652 S.W.2d at 934.

16

theory. *See, e.g.*, *Friberg-Cooper*, 197 S.W.3d at 832 (Unjust enrichment "applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution."). Hillman disagrees, arguing that unjust enrichment is an independent cause of action. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998) (describing unjust enrichment as a "cause of action" that had been asserted by a party therein).

In this case, Hillman filed an amended pleading four days after Appellees moved for summary judgment, asserting multiple other causes of action in support of his claim for unjust enrichment, including assumpsit, money had and received, and quantum meruit. Appellees never amended their motion to address the new causes of action. Accordingly, because Hillman asserted other causes of action in support of his unjust-enrichment claim, it is unnecessary for us to resolve the question of whether it is an independent cause of action.

As a second argument in support of the trial court's rendition of summary judgment on unjust enrichment, Appellees assert that there is no evidence to support Hillman's "theory of recovery," alleging that Hillman's affidavit fails to identify any specific tasks that he performed in support of the project. This broad allegation again falls short of satisfying the requirements of Rule 166a(i) by failing to point to the specific elements of the causes of action that it seeks to challenge. *See Garza*, 285 S.W.3d at 923. Furthermore, Hillman's affidavit states that, in the course of working with VanMeter and Davis, he identified several locations for WLM's operations and also secured "several contracts."

Additionally, Hillman's affidavit describes services that he performed for the water station business that would form the purported partnership between Hillman, VanMeter, and Davis. According to the affidavit, Hillman provided these services

17

in anticipation that Dahlia would receive a share of ownership in the project, and that he was not compensated for those services. These allegations raise a genuine issue of material fact in connection with each of the elements of a cause of action for quantum meruit. *See Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("To recover under quantum meruit a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.").

Because Appellees have failed to challenge any of the causes of action that Hillman has pled in support of his claim for quantum meruit, and because Hillman introduced more than a scintilla of evidence in support of a claim for quantum meruit, we sustain Hillman's fourth issue.

*TCPA Attorney's Fees*

In his second issue, Davis argues that the evidence does not support the amount of attorney's fees that were awarded to Crawford under the TCPA.

In Texas, parties commonly rely on the "lodestar" process to establish a claim for attorney's fees. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Under the lodestar process:

> [T]he determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

18

*Id.* (citations omitted). The "relevant factors" that are applied in step two are derived from a list set out in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct and adopted in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). *El Apple*, 370 S.W.3d at 760–61. Furthermore, the use of contemporaneous billing records such as those that were utilized by Crawford in this case are strongly encouraged, but not required. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019).

When offering proof under the lodestar method, parties are tasked with segregating their fees, so that an award is rendered only as to fees that were incurred in connection with the parties and claims for which recovery is allowed. *Id.* at 502. Segregation is not required when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991), holding modified by *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). However, "intertwined facts" do not turn unrecoverable fees into recoverable fees. *Chapa*, 212 S.W.3d at 313. As such, the exception is now applied only when "discrete legal services advance both a recoverable and unrecoverable claim." *Id.* at 313–14.

An award of attorney's fees under the TCPA is reviewed for an abuse of discretion. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). A trial court abuses its discretion when its award is arbitrary, unreasonable, and without reference to guiding principles. *Iola Barker v. Hurst*, 632 S.W.3d 175, 194 (Tex. App.— Houston [1st Dist.] 2021, no pet.).

In support of his claim for attorney's fees, Crawford relied on the affidavit of Tommy Sheen, his attorney. Attached to Sheen's affidavit were redacted invoices for Sheen's services, as well as a spreadsheet, which includes only those fees and

expenses that, according to Sheen, were associated with the TCPA motion to dismiss. Sheen's affidavit indicated that the fees that are set out in the invoices satisfy each of the elements of Rule 1.04, and the invoices identify the particular people performing work on the case, as well as the hourly rate charged by each person.

The affidavit concluded by stating that the total amount of attorney's fees and expenses associated with the TCPA motion were $90,401. The affidavit also indicated that Crawford has incurred expenses in connection with the TCPA motion in the amount of $1,691.72. These amounts are consistent with the totals on the spreadsheet that is attached to the affidavit. However, Sheen's spreadsheet includes several entries from August and early September 2018 that do not correspond to any of the invoices attached to his affidavit. Furthermore, the spreadsheet entries that do not reflect corresponding invoice entries fail to indicate what work, if any, was being performed at the time.

Davis objected to the inclusion of several entries in the invoices. The objections were supported by the affidavit of Joel Gordon, Davis's attorney, which included an exhibit that critiqued Sheen's invoices and spreadsheets on a line-by-line basis. Gordon categorized the critiques in the exhibit as follows:

- Entries that are unrelated to the TCPA motion;

- Entries that relate to discovery that was served before the TCPA motion was filed, where such discovery would have been served regardless of the TCPA motion;

- Entries that are so vague that they do not provide meaningful evidence of the activity performed;

- Entries that "bootstrap" time from previous invoice periods and were therefore not "contemporaneously billed;"

- Entries involving clerical work, which is not recoverable under Texas law (*see, e.g.*, *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.— Fort Worth 1997, pet. denied) ("Compensation for a legal assistant's work may be separately assessed and included in the attorney's fees award if a legal assistant performed work that has traditionally been done by an attorney."));

- Entries reflecting work that was performed after the TCPA motion was resolved, and which therefore is not related to the TCPA motion;

- Entries that are unsupported by attached invoices;

- Entries that are duplicative and/or involve more than one person engaged in the same activity (e.g., no justification for multiple people attending meetings or hearings);

- Entries that fail to segregate services related to people other than Crawford;

- Entries that relate to billing that was performed by individuals whose role is not described in the affidavit; and

- Entries that relate to consultations with a "TCPA expert," showing that counsel was "essentially learning on the job."

All of these criticisms challenge Crawford's proof of (1) the reasonableness of the time entry or (2) the relationship between the time entry and the TCPA motion. In other words, Gordon argues that the base lodestar calculation should be reduced, rather than arguing for a reduction arising out of other factors that can be considered in step two. *See El Apple*, 370 S.W.3d at 760. After eliminating all fees that he claims were unreasonable or unrelated, Gordon concluded that, of the fees described by Sheen, only $6,430 were reasonable and necessary, and related to the TCPA motion to dismiss.

21

After the affidavits were filed,[8] the trial court rendered judgment in favor of Crawford for $30,000 in attorney's fees and $1,691.72 in expenses.

We have reviewed the record and determined that Sheen's affidavit failed to establish a base lodestar of $90,471 in attorney's fees under *Rohrmoos*. Among other things, several of the entries that are described in the spreadsheet are not supported by invoices or other descriptions showing what work was done. *See Rohrmoos*, 578 S.W.3d at 501 (sufficient evidence must include, at a minimum, evidence of the particular services performed); *DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 520, 533 (Tex. App.—Eastland 2024, no pet.) (citing *Rohrmoos*).

An award that bears no relationship to the evidence constitutes an abuse of discretion. *Iola Barker*, 632 S.W.3d at 194–95; *see also Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (The "trial court abuses its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'" (quoting *Mercedes-Benz Credit Corp. v. Thyne*, 925 S.W.2d 664, 666 (Tex. 1996)); *Robinson v. Brannon*, 313 S.W.3d 860, 868 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (applying *Goode* to a claim for attorney's fees); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

In this case, the trial court's award of $30,000 in attorney's fees was not accompanied by any findings. Accordingly, we must determine whether there is any basis for the trial court's ruling that is supported by the evidence. *Iola Barker*, 632 S.W.3d at 186.

Although Crawford argues on appeal that the trial court did not err in rendering the award of attorney's fees, he likewise does not point to any particular

---

[8]Davis also objected to determining the attorney's-fee issue based solely on the affidavits and requested a jury trial on the issue. However, on appeal, Davis does not complain about the trial court's decision to resolve the attorney's-fee claim based solely on the affidavits.

portions of the record that would explain the manner in which the trial court calculated its judgment (much less argue that those calculations were proper), nor does the record otherwise contain any indications as to why, given the nature of the parties' dispute, the base lodestar calculation should be $30,000. Additionally, because Davis has made no argument for reducing a base lodestar calculation to $30,000, and because the record contains no other indication that would support such an adjustment, we cannot conclude that the trial court's award was a result of a reduction from step two of the process described in *El Apple* and *Rohrmoos*.

We are reluctant to require a trial court to generate findings that address the parties' disputes over the base lodestar calculation on a line-by-line basis, a process that would no doubt consume substantial time and resources.[9] Nevertheless, when the trial court renders an award of attorney's fees that does not correspond to the claims of the parties or experts, the record must otherwise contain some indication of the basis for the trial court's decision. *See Iola Barker*, 632 S.W.3d at 194–95. Because the record in this case is void of any such indication, we conclude that the trial court's decision was arbitrary, and therefore an abuse of discretion.

We sustain Davis's second issue. On remand, the trial court should either clarify the basis for its award of $30,000 or render a new judgment (including related findings, if necessary) that is consistent with this opinion.

### *The Motion to Compel*

In his fifth issue, Hillman complains that the trial court failed to issue a ruling on his motion to compel before rendering a final judgment. However, Hillman will

---

[9]Likewise, although we must review the record to determine whether the award is supported by the evidence, we are not obligated to conduct a line-by-line assessment to determine whether some arbitrary combination of disputed time entries happens to reasonably correspond to the trial court's award. *See Iola Barker*, 632 S.W.3d at 194–95.

have an opportunity to secure a ruling on his motion to compel after remand, if he still believes it is necessary. For that reason, we overrule Hillman's fifth issue.

*This Court's Ruling*

We reverse the judgment of the trial court with respect to the summary judgment on Davis's claims. We also reverse the summary judgment on Hillman's claims for conspiracy and unjust enrichment. We affirm the summary judgment as to Hillman's claims for breach of fiduciary duty against Crawford, Carson, and Seburg, but reverse as to Hillman's claims for breach of fiduciary duty against VanMeter. Finally, we reverse the award of attorney's fees in favor of Crawford. All claims that are reversed are remanded for further proceedings consistent with this opinion.


JOHN M. BAILEY
CHIEF JUSTICE


October 31, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[10]

Williams, J., not participating

---

[10]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.